IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DENNIS CHADWICK MCGEE, as Personal Representative/Administrator of the Estate of DILLON C. MCGEE, deceased, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) No. 1:15-cv-01069<br>)<br>) |
| MADISON COUNTY, TENNESSEE, JOHN MEHR, Individually and in his Official Capacity as Sheriff of Madison County, and THOMAS KNOLTON, Individually and in his Official Capacity as a Deputy Sheriff of the Madison County Sheriff's Office, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

ORDER GRANTING DEFENDANTS' JOINT MOTION TO STAY PROCEEDINGS

Before the Court is the joint motion of Defendants, Madison County, Tennessee, John Mehr, individually and in his official capacity as Sheriff of Madison County, and Thomas Knolton, individually and in his official capacity as a deputy sheriff of the Madison County Sheriff's Office, to stay this action pending the resolution of a civil rights investigation by the Federal Bureau of Investigation ("FBI"). (Docket Entry ("D.E.") 22.) Plaintiff, Dennis Chadwick McGee, as personal representative/administrator of the estate of Dillon C. McGee, has responded in opposition. (D.E. 27.) For the reasons discussed below, the motion is GRANTED.

*Background*

Plaintiff filed suit on March 30, 2015, alleging, among other things, that Knolton, acting under color of state law, violated state and federal law when he shot and killed his son, Dillon C.

McGee, on September 26, 2014. (D.E. 1 at 1–3.) The Tennessee Bureau of Investigation opened an inquiry into the shooting, and, on February 2, 2015, evidence was presented to the Madison County, Tennessee grand jury, which returned no true bills. (Dec. of Sheriff John Mehr ("Mehr Dec.") ¶ 3.) On February 9, 2015, Todd McCall, Special Agent in Charge of the FBI's Memphis, Tennessee division, informed Sheriff Mehr that the United States Department of Justice had instructed him to open a civil rights investigation into the September 26, 2014 incident. (*Id.* ¶ 4.) According to Sheriff Mehr, that investigation is ongoing. (*Id.* ¶ 5.) Defendants move to stay this matter until the investigation is concluded.

*Law and Analysis*

I. **Motion to Stay**

A court's "'power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants, and the entry of such an order ordinarily rests with the sound discretion of the District Court.'" *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014) (quoting *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977)). However, "'nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment.'" *Id.* at 627 (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)).

Instead, courts "generally consider and balance certain factors when determining whether a stay of civil proceedings is appropriate in a given case: 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiff[] in proceeding expeditiously weighed against the prejudice to [a] plaintiff[] caused by the delay; 4) the private

interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.'" *Id.* (quoting *Chao*, 498 F. Supp. 2d at 1037). Courts "'should [also] consider the extent to which the defendant's [F]ifth [A]mendment rights are implicated.'" *Id.* (quoting *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995)). The party seeking the stay has the burden of showing "'that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order.'" *Id.* at 627–28 (quoting *Ohio Envtl. Council*, 565 F.2d at 396). The Court will address each factor in turn.

    A.    *Overlap of Issues and Status of Criminal Case*

Defendants contend that the substantial overlap of the FBI's investigation and this civil action makes it very likely that deputy Knolton, absent a stay, will have to choose between potentially incriminating himself during discovery and trial, or invoking his right against self-incrimination under the Fifth Amendment to the United States Constitution and risk the adverse inferences that might result. (D.E. 22-1 at 4–5.) Defendants insist that any civil rights investigation into the September 26, 2014 shooting would naturally have Knolton as a primary target. (*Id.*) As to the status of the criminal case, Defendants concede that while Knolton has not been indicted, the Court still possesses broad discretion to grant a stay. (*Id.*)

McGee maintains that because there have been no charges, and it is uncertain that the investigation will lead to any, Defendants' request is premature. (D.E. 27 at 5.) He maintains that as there is no pending criminal case to overlap with his civil action, only an investigation of unknown length and purpose exists. (*Id.*) McGee notes that Defendants have not provided any evidence that they are the targets of the investigation or any information as to the focus of the investigation. (*Id.* at 5–6.)

Recognizing that "courts generally do not stay proceedings in the absence of an

3

indictment," *EMA Nationwide*, 767 F.3d at 628 (citation omitted), Defendants cite to *Walsh Secs., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523 (D.N.J. 1998) as an example of a district court granting a motion to stay civil proceedings even though no defendant had been formally charged. *Id.* at 527. In *Walsh*, the United States Attorney, who was not a party to the civil suit, was conducting a parallel investigation into whether some defendants had engaged in criminal conduct. *Id.* at 526. The defendants claimed that they could not participate in civil discovery while simultaneously protecting their Fifth Amendment right against self-incrimination. *Id.* In holding that the matters overlapped even though no party had been indicted, the court found that the criminal investigation and civil case focused on the same allegations of misconduct and entered a temporary stay of a few months. *Id.* at 527–29.

Defendants also reference *United States v. Any and All Assets of that Certain Business Known as Shane Co.*, 147 F.R.D. 99 (M.D.N.C. 1992), where a district court stayed a civil forfeiture proceeding until a criminal investigation of the claimants was finished. *Id.* at 100–02. The government moved to stay the civil case out of a concern that the defendants might use the liberal discovery rules to obtain information that could jeopardize the ongoing criminal investigation. *Id.* at 100. As in *Walsh*, none of the defendants in *Any and All Assets* had been indicted. *Id.* Finally, Defendants rely on *Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985), in which a district court granted a stay of civil proceedings brought by the Department of Labor pending the resolution of a parallel criminal investigation by the United States Department of Justice. *Id.* at 117.

McGee seeks to distinguish *Walsh* from the present case on the grounds that, in that case, the government informed the court that absent a stay, information turned over during discovery might harm the pending criminal investigation. (D.E. 27 at 6.) Plaintiff contends that there is no

4

such concern here since the government is not a party to this action. (*Id.*) While the *Walsh* court noted the government's concern about civil discovery jeopardizing the criminal investigation, the majority of its analysis focused on whether the defendants would have to choose between exercising their Fifth Amendment rights or participating in discovery. 7 F. Supp. 2d at 527–28. Based on that concern, and even though no indictments had been obtained, the court granted a temporary stay. *Id.* at 527–29.

Plaintiff is correct that in *United States v. Any and All Assets of that Certain Business Known as Shane Co.*, the government was the movant for a stay in order to protect a parallel criminal investigation. (D.E. 27 at 7.) He believes this circumstance makes that holding inapplicable to this matter because here the government is not a party, and there is no way to confirm whether there is a criminal investigation that must be protected from the civil discovery rules. (*Id.*) However, the court in *Any and All Assets* granted a temporary stay based not only on the government's belief that their criminal investigation might be compromised, but also because the defendants might invoke their Fifth Amendment rights during discovery, which could cause a substantial delay. 147 F.R.D. at 102.

Here, the Court finds that these two matters share a common basis, as McGee's civil suit and the FBI's investigation both arise out of the September 26, 2014 incident. "[T]he extent to which the issues in the criminal case overlap with those in the civil case, is regarded as 'the most important factor' because '[i]f there is no overlap, then there would be no danger of self-incrimination and no need for a stay.'" *Chao*, 498 F. Supp. 2d at 1039 (quoting *Metzler v. Bennett*, No. 97-CV-148 (RSP/GJD), 1998 WL 187454, at *6 (N.D.N.Y. Apr. 15, 1998)). Any indictment handed down as a result of the investigation will be based on the same factual circumstances that Plaintiff alleges in his complaint. The extent to which these two undertakings

overlie creates a danger of self-incrimination on the part of Knolton. This factor strongly supports granting the motion.

As to the status of the criminal case, both parties agree that the Court has broad discretion to grant a stay, even in the absence of an indictment. According to Sheriff Mehr, the FBI is currently investigating the September 26, 2014 incident. (Mehr Dec. ¶¶ 4–5.) However, no party can offer any information about the investigation because, according to McGee, the United States Attorney for the Western District of Tennessee has an official policy of refusing to comment on active investigations. He notes that no one has been charged as a result of the FBI's investigation, but, as the court held in *Chao*, "[a]lthough Defendants have not been indicted, it appears that the issues framed by any indictment to be handed down will be coextensive with those in this [civil] case . . . ." *Chao*, 498 F. Supp. 2d at 1039. While true that, "the fact that a defendant has not been indicted generally weighs against a stay . . . other considerations discussed below render this factor less significant." *Id.* at 1038–39. The overlap of the matters, and the other factors considered, weigh in favor of granting the motion.

> B.  *Plaintiff's Interest in Proceeding Expeditiously versus Prejudice in Delay and Private Interests and Burden on the Defendants*

Plaintiff maintains that his strong interest in prosecuting this case in a timely manner, and his concern that any delay could result in witnesses moving away, or memories fading, outweighs any burden on Defendants. (D.E. 27 at 8–9.) McGee notes that Knolton's Fifth Amendment rights will not be protected once the FBI concludes this investigation, as any state or federal agency could decide to investigate this incident in the future, and present that evidence to a grand jury. (*Id.*) He insists that Defendants should not be allowed to use the possibility of Knolton having to choose between his Fifth Amendment rights or defending this action as a way to indefinitely stay this case. (*Id.*)

Defendants believe that a stay will only temporarily delay Plaintiff's civil suit, but have provided no details as to the scope of the FBI's investigation. (D.E. 22-1 at 6.) Defendants contend that denying their request will force Knolton to choose between exercising his constitutional rights or defending this action. (*Id.*) Sheriff Mehr and Madison County state that their defense to Plaintiff's suit relies heavily on Knolton's ability to participate meaningfully in discovery and trial. (*Id.*)

Considering the concerns raised by the parties, the Court finds that a stay of limited duration is appropriate in this matter. A limited stay allays Plaintiff's concern about the potential loss of discoverable material due to unavailable or forgetful witnesses, while allowing the family a timely resolution of this matter. Defendants' interests are protected by a limited stay, as Mehr and Madison County might suffer prejudice if Knolton could not participate in discovery and trial because of the invocation of his Fifth Amendment rights. However, Defendants' request for an indefinite stay is inappropriate because no indictments have been returned, and the Court has no way of knowing when the FBI will conclude their investigation. A limited stay also allows the FBI to continue its investigation into the September 26, 2014 incident. On balance, these factors support granting the motion and entering a temporary stay.

### C. Court's Interest

Defendants believe that the FBI will complete its investigation in a timely matter and notify the Court immediately, so an indefinite stay would not waste time or judicial resources. (D.E. 22-1 at 7.) McGee insists that no one knows when the investigation will be completed. (D.E. 27 at 9.) He contends that an indefinite stay will not further the Court's interest in resolving matters in a timely fashion. (*Id.*)

The Court finds that entering a limited stay will allow it to manage its docket and resolve

the matters before it in a timely fashion. A temporary stay permits the FBI's investigation to continue, and could result in an indictment, which "may ultimately reduce or eliminate the need for discovery or result in a settlement of this case . . . ." *Chao*, 498 F. Supp. 2d at 1040. A temporary stay also promotes judicial economy, as "the parties and the Court would have to consume time and resources to determine the precise contours of Defendant['s] Fifth Amendment Rights." *Coley v. Lucas Cnty, Ohio*, No 3:09 CV 0008, 2011 WL 5838190, at *4 (N.D. Ohio Nov. 18, 2011). Accordingly, this factor weighs in favor of granting the motion.

  D. *Public Interest*

Defendants aver that if the FBI's investigation results in Knolton's indictment, the public's interest will be advanced just as much, if not more than it would by Plaintiff's civil action. (D.E. 22-1 at 7.) Plaintiff maintains that the public interest is best served by permitting his case to proceed to discovery and trial because this suit is the only current means to hold Defendants accountable to the public. (D.E. 27 at 10.) The Court finds that the public interest could be advanced either by this civil action or any potential criminal prosecution that might result from the FBI's investigation. This factor weighs in favor of neither party.

*Conclusion*

Considering all of the factors, the Court GRANTS Defendants' motion to stay. Defendants have established that there is a sufficient need for a short delay and that neither party nor the public will suffer harm from entry of this stay. *See EMA Nationwide*, 767 F.3d at 627–28. This matter is temporarily stayed for sixty days from the date of entry of this order. After sixty days, the Defendants must file responsive pleadings. Following that, the parties will conduct a scheduling conference with Magistrate Judge Edward G. Bryant and exchange initial disclosures as required under Rule 26 of the Federal Rules of Civil Procedure. Should the FBI's

investigation result in an indictment, or be closed in the interim, the parties shall notify the Court immediately.

      IT IS SO ORDERED this the 10th day of June, 2015.

                                        s/ J. DANIEL BREEN
                                        CHIEF UNITED STATES DISTRICT JUDGE